Dear Senator Herbert,
¶ 0 This office has received your request for an Attorney General's Opinion addressing, in effect, the following question:
The provisions of 3A O.S.Supp. 1995, § 205.7a(B) exemptracetrack licensees from paying the $200 per day license fee fordays on which the racetrack accepts pari-mutuel wagering on racestelevised from another racetrack within the State.
 Does this exemption apply to days on which:
 A. Wagers are accepted on televised races from more than oneOklahoma-licensed racetrack?
 B. Wagers are accepted on televised races from one or moreout-of-state racetracks?
 C. Wagers are accepted on live races?
 I.
¶ 1 Under the general provisions of the Oklahoma Horse Racing Act, 3A O.S. 1991 and Supp. 1995, §§ 200-208.11, only licensed racetracks — also called organization licensees — may accept pari-mutuel wagers on horse races. Those applying for a racetrack license must, under the provisions of 3A O.S.Supp. 1995, §205.2(A), meet a variety of requirements. One of the general requirements is the payment of a license fee which is composed of (1) a flat $5,000 fee for each race meeting, and (2) an additional $200 for each racing day requested. In pertinent part Section 205.2 provides:
 Each applicant requesting an organization license to conduct horse racing with the pari-mutuel system of wagering shall include with each application a nonrefundable license fee equal to the sum of Five Thousand Dollars ($5,000.00) for each race meeting and Two Hundred Dollars ($200.00) for each racing day requested.
3A O.S.Supp. 1995, § 205.2[3A-205.2](A).
¶ 2 The statutory provision about which you inquire, 3AO.S.Supp. 1995, § 205.7a[3A-205.7a](B), exempts applicants from the payment of the $200 component of the license fee for days on which they accept wagering only on races televised from another licensed track within this State:
 For the days on which a licensed track within this state conducts pari-mutuel wagering only on races televised from another licensed track within this state, the conducting of pari-mutuel wagering shall not be considered racing days for the purposes of Section 205.2 of Title 3A of the Oklahoma Statutes.
3A O.S.Supp. 1995, § 205.7a[3A-205.7a](B) (emphasis added).
¶ 3 Your inquiry calls into question the meaning of the above-quoted statutory provision. The cardinal rule for construction of statutes is to determine the intent of the Legislature by considering the statutory language used by the Legislature. Walker v. St. Louis-San Francisco Ry Co.,671 P.2d 672, 673 (Okla. 1983). Further, when the intent of the Legislature is plainly expressed in the statute, "it must be followed without further inquiry." Matter of Request of HammProd. Co. for Ext., 671 P.2d 50, 52 (Okla. 1983).
¶ 4 The intent of the Legislature in providing for the exemption from the general license application procedure, as expressed in the above-quoted statute, is clear. The exemption applies to those race days on which a licensed racetrack within the State conducts pari-mutuel wagering only on races televised from another licensed track "within this state." It is thus clear that the exemption only applies when the only pari-mutuel wagering being accepted at the Oklahoma licensed racetrack is wagering on televised races from another Oklahoma licensed racetrack.
¶ 5 The Legislature, at 25 O.S. 1991, § 25[25-25], has specifically provided that words used in a statute "in the singular number include the plural, and the plural the singular, except where a contrary intention plainly appears." Under this rule of construction, we cannot read the exception to apply only to televised races from a single racetrack licensed within the State. Rather, since no contrary intent is shown, we must read Section 205.7a's exception to apply to days on which the only accepted wagers are on races televised from either another licensed racetrack or racetracks within the State.
 II.
¶ 6 The exception, however, plainly does not apply to days on which wagers on races televised from racetracks out-of-state
are accepted, nor does the exception apply to race days on which wagers are accepted on live races. The language establishing the exception speaks of the exception applying to days on which a licensed track within this State conducts pari-mutuel wageringonly on races televised from another licensed track fromwithin this state.
¶ 7 In Hiner v. Hugh Breeding, Inc., 355 P.2d 549 (Okla. 1960), the Oklahoma Supreme Court construed a venue statute that provided that certain actions against makers of notes, claims or other indebtedness "can only be brought in the county in which" a maker of the instrument resides. Concluding that the words "can only" were "words of limitation and exclusion," the Court defined the word "only" as follows:
 The word "only" is defined as: Alone in its class, sole, single, exclusive, solely, this and no other, nothing else or more.
Id. at 551.
¶ 8 Section 205.7a's license fee exception applies when the "only" wagers are on races televised from another Oklahoma racetrack — when such wagers and no other are accepted. Thus, the acceptance of other wagers, either on live races or on races televised from a non-Oklahoma racetrack, would take any day on which such other wagers are accepted out of Section 205.7a's exception.
¶ 9 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The provisions of 3A O.S.Supp. 1995, § 205.7a(B), whichexempt from the $200.00 a day racetrack license fee "days onwhich a licensed track within this state conducts pari-mutuelwagering only on races televised from another licensed trackwithin this state," apply to:
 A. Days on which a State licensed racetrack conductspari-mutuel wagering only on races televised from anotherlicensed racetrack or racetracks within this State.
 The exemption, however, does not apply to:
 B. Days on which a State licensed racetrack conductspari-mutuel wagering on races televised from out-of-state; or
 C. Days on which a State licensed racetrack conductspari-mutuel wagering on live races held at that race track.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL